IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| RONNIE TURNER, § | |
| Petitioner, § | |
| § | |
| v. § | Civil Action No. 4:08-CV-570-Y |
| § | |
| NATHANIEL QUARTERMAN, Director, § | |
| Texas Department of Criminal Justice, § | |
| Correctional Institutions Division, § | |
| Respondent. § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner Ronnie Turner, TDCJ-ID #1336062, is in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Gatesville, Texas.

Respondent Nathaniel Quarterman is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

#### C. FACTUAL AND PROCEDURAL HISTORY

In 2004 Turner was charged with aggravated robbery with a deadly weapon in Tarrant

County, Texas, stemming from an armed robbery at a Quick Mart on West Vickery Drive in Fort Worth on July 16, 2004, around 10:00 a.m. (Clerk's R. at 2)

At trial, Cesar Salinas testified he was walking past a car wash toward the convenience store when he observed a person in one of the stalls standing next to a greenish, two- or four-door Pontiac Grand Am with "sort of" tinted windows. Salinas went into the store, came back out, and was standing in front of the store when he saw the person walk into the convenience store and exit approximately two minutes later with beer and the cash drawer. The person returned to the car in the car wash stall and fled. Salinas informed law enforcement that he thought the first numbers of the license plate were 63, and he was able to provide a description of the robber and his clothing. Salinas selected Turner's photo from a photographic line-up and gave a written statement to law enforcement. He could not identify Turner at trial. (Reporter's R., vol. 3, at 120-50

There were three women in the store when the robbery occurred, Saroj Mehra and Ketsana Mehra, whose family owned the store, and Etsuko LaFleur. Saroj Mehra testified she was operating the cash register and had finished checking out one customer when another customer, with a bandana on his head and covering one eye, placed beer on the counter, held up a revolver and demanded money. She identified Turner at trial as the person who robbed her at gunpoint. She testified she did not recall whether law enforcement officers questioned her about the robber's description or identity. Ketsana Mehra testified she noticed the man with the bandana on his head when he entered the store and went to the beer case. She heard yelling and looked up and saw the man leave the store carrying beer and the tray of money. Ketsana was able to describe certain clothing the robber wore and identified Turner in court as the person who robbed the store. She stated that at the crime scene, law enforcement officers did not question her or ask her to describe

2

the robber or look at photos. (*Id.* at 74-112) Etsuko LaFleur testified that she recalled the robber wearing a bandana on his head but did not get a good look at his face to be able to recognize the person. (*Id.* at 113-18)

The responding officer testified that several witnesses gave a description of the person that robbed the store. (*Id.* at 20-21) The detective assigned to the case testified he was advised that Salinas and Ketsana had relevant information and that only Salinas could identify the robber. He stated the women, who were extremely upset, were not questioned at length nor shown a photographic line-up for identification purposes. (*Id.* at 32-50, 157-58) ) Turner was arrested later that day in a teal green, four-door Pontiac Grand Am, license plate number K61 JNH. There were no weapons, money, beer bottles, or cash drawer found in the vehicle. (*Id.* at 48-49)

On the evidence, the jury found Turner guilty of the charged offense, and, following Turner's plea of true to the repeat offender notice in the indictment, the trial court assessed his punishment at forty-five years' confinement. (Clerk's R. at 461) Turner appealed his conviction and sought state postconviction habeas to no avail. *Turner v. Texas*, 2-05-427-CR, slip op. (Tex. App.–Fort Worth Oct. 5, 2006) (not designated for publication); *Turner v. Texas*, PDR No. 1766-06; *Ex parte Turner*, State Habeas Application No. WR-63,583-12, at cover. This federal petition for habeas relief followed.

### D.  Issues

Turner claims the state engaged in prosecutorial misconduct, the detective's testimony impeached the Mehras' testimony, and he received ineffective assistance of trial counsel. (Petition at 7-8)

3

### E. RULE 5 STATEMENT

Quarterman believes that Turner has failed to exhaust available state remedies as to one or more of his claims and that the claims are procedurally barred. (Resp't Answer at 5-8) Notwithstanding a petitioner's failure to exhaust the remedies available in state court, a court may deny a petition on the merits. 28 U.S.C. § 2254(b)(2).

### F. DISCUSSION

#### 1. Legal Standard for Granting Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The Act further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue

made by a state court shall be presumed to be correct. This presumption applies to all findings, express and implied. *Valdez v. Cockrell*, 274 F.3d 941, 948 (5th Cir. 2001). The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

2. Prosecutorial Misconduct/Inconsistencies in Testimonies

Turner claims his conviction was obtained by the prosecution's use of perjured testimony from witnesses Saroj and Ketsana Mehra identifying him at trial as the person who robbed the store. Turner directs the court to various inconsistencies in the Mehras' testimonies and that of the detective and the offense report.

The state appellate court rejected Turner's claim, stating "the fact that the witnesses' testimonies were not uniform can be explained in any number of ways, including misunderstandings between the police officers and the witnesses or the effects of shock on the witnesses following the robbery." The state habeas judge, who was the same judge who presided over Turner's trial, found that there was no evidence to support Turner's assertion that the two witnesses committed perjury or that the state knowingly presented perjured testimony. (12State Habeas R. at 90-93) Contradictory testimony does not prove perjury. *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990). This claim essentially raises the issue of witness credibility. Any inconsistencies or contradictions in the witnesses' testimony is a matter for the jury to resolve. *See Little v. Butler*, 848 F.2d 73, 76 (5th Cir. 1988).

5

Turner also claims the prosecution engaged in misconduct by failing to disclose to the jury evidence favorable to him, specifically that law enforcement stopped his car, a teal, four-door Grand Am, license plate number beginning with K61, without tinted windows, and containing no evidence of the robbery, instead of a green, two-door Grand Am, with a license plate number beginning in 63, as described by Salinas. Under *Brady v. Maryland*, 373 U.S. 83 (1963), the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. *Id.* at 87. Evidence is material only if it is reasonably probable that the result of the proceeding would have been different had the evidence been disclosed to the defense.

Applying the appropriate standard, the state habeas court determined that Turner had presented no evidence or authority that the state had a duty to disclose that Turner's car had four doors to the jury or that defense counsel did not know about Turner's claim that his car had four doors. (12State Habeas R. at 91, 94) The state court's decision is not contrary to *Brady* or unreasonable in light of the evidence presented in the state court. Slight inaccuracies in Salina's description of the car to law enforcement and in his trial testimony do not rise to the level of materiality warranting reversal under *Brady*. Moreover, the jury heard evidence regarding differences in Salina's description of the car and the car Turner was arrested in and viewed photographs of the car Turner was arrested in from which certain differences can be discerned from the witness's description.

### 3. Ineffective Assistance of Counsel

Turner claims he received ineffective assistance of trial counsel because counsel failed to (1) point out to the jury that law enforcement stopped the wrong car, his car, which is a green four-

6

door Grand Am, with a license plate number beginning in K61, not 63, without tinted windows, (2) take any photos to show the difference in the car described by Salinas and his car, and (3) subpoena the investigator to testify to the differences.

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 688. A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

The state habeas court conducted a hearing by affidavit on Turner's claims. Trial counsel Douglas Emerson responded to Turner's allegations as follows:

> The applicant also alleges that defense counsel failed to develop testimony on the issue of whether his car was a two-door or four-door model. Defendant said his was four-door. Witness, Cesar Salinas, could not identify the vehicle although he stated it was a two-door model. It was brought out that the police report stated the vehicle was a four-door model. The defense did not possess any photographs on Mr. Turner's vehicle, and the investigators had no personal knowledge of Mr. Turner's vehicle. Mr. Turner was advised that he had personal knowledge of his vehicle and could testify on this point. After consulting with defense counsel he decided he did not wish to testify. Counsel does not recall any conclusive testimony at trial about the license plate number on Defendant's vehicle. (12State Habeas R. at 88)

Trial counsel J. Rex Barnett responded as follows:

Applicant next complains that: (1) the defense never called their Investigator to the stand to testify that the Applicant had been driving a four-door Grand Am, and not a two-door as testified to by a witness; and (2) that the defense did not call the Applicant to the stand to testify about the differences in the two cars.

The undersigned attorney does not recall the investigator in this case being able to testify from personal knowledge as to what type of vehicle the Applicant was driving on the day of the offense. The defense discussed this issue, but the only witness who was able to testify from personal knowledge that was known to us was the Applicant himself. Had Applicant testified, his testimony would [have] opened the door to the State's introduction of evidence regarding the Applicant's extensive criminal history at the guilt-innocence state of the trial. . . . (12State Habeas at 85)

Based on counsel's affidavits in conjunction with the record evidence, the state habeas judge made specific findings on Turner's ineffective-assistance claims and concluded that he had failed to prove ineffective assistance under the requirements of *Strickland*. (State Habeas R. at 91-92, 94-95) Weighing the credibility of the affiants was the role of the state court, and, clearly, the state court found the affidavits of counsel to be credible. *See Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005) (providing that a trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are "virtually unreviewable" by the federal courts). In turn, the Texas Court of Criminal Appeals denied habeas relief on the basis of the habeas court's findings.

Turner presents no compelling argument or evidence to rebut the state courts' adjudication of his ineffective assistance claims, and there is nothing in the record to suggest that, but for trial counsel's alleged acts and omissions, the jury would have acquitted Turner. Thus, having independently reviewed Turner' ineffective-assistance claims in conjunction with the state court records, this court cannot say that the state courts' determination was contrary to or involved an unreasonable application of the *Strickland* standard or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d)(2), (e)(1).

4.  State Habeas Proceedings

Turner claims the state court failed to afford him a full and fair evidentiary hearing on his

claims and that he could not get a fair trial by the judge who presided over the trial and state habeas proceedings. It is well established that infirmities in state habeas proceedings do not constitute grounds for federal habeas relief. *See Duff-Smith v. Collins,* 973 F.2d 1175, 1182 (5th Cir. 1992). A state habeas court's factual determinations are entitled to a presumption of correctness under § 2254(e)(1), regardless whether the state habeas court held a live evidentiary hearing, versus a paper hearing. *See Clark v. Johnson*, 202 F.3d 760, 766 (5th Cir. 2000). Deference to a state habeas court's factual determinations is not dependent upon the quality of the state court's evidentiary hearing. *See Valdez v. Cockrell,* 274 F.3d 941, 951 (5th Cir. 2001); *Bass v. Dretke*, No. 02-20289, 2003 WL 22697282, at * 3 (5th Cir. Nov. 14, 2003) (not designated for publication). A petitioner can defeat the presumption of correctness only with clear and convincing evidence. *See* 28 U.S.C. § 2254(d)(1); *Duncan v. Cockrell*, 70 Fed. Appx. 741, 746 (5th Cir. 2003). Turner has failed to rebut the presumptive correctness of the state habeas court's findings nor does an independent review of the state court records reveal clear and convincing evidence that would rebut the presumption of correctness.

### 5. Evidentiary Hearing

Turner requests an evidentiary hearing for purposes of further developing the record in support of his claims. *See* 28 U.S.C. § 2254(e)(2). Section 2254(e)(2) provides:

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
>
>> (A) the claim relies on–
>>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of

9

>>due diligence; and

>>(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Turner has not met the statutory criteria. The case can be decided on the record, and the interests of justice do not require a hearing. Further development of the record is not necessary in order to assess the claims.

## II. RECOMMENDATION

Based on the foregoing, Turner's petition for writ of habeas corpus should be denied. Turner's "Motion for Leave to File Motion for Discovery, Production and Inspection of Evidence" (docket entry 33) is denied in light of the above findings and conclusion and his application to proceed *in forma pauperis* (docket entry 34) is denied as moot. No recommendation is made on Turner's motion for leave to file motion for summary judgment (docket entry 35).

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within ten (10) days after the party has been served with a copy of this document. The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until August 26, 2009. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. §

10

636(B)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual finding or legal conclusion accepted by the United States District Judge. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc op. on reh'g); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).

## IV.  ORDER

Under 28 U.S.C. § 636, it is ORDERED that each party is granted until August 26, 2009, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August 5, 2009.

                                          /s/   Charles Bleil
                                      CHARLES BLEIL
                                      UNITED STATES MAGISTRATE JUDGE